## YELLOW CAB OPERATING CO. v. THOMPSON.

No. 26982.　Oct. 4, 1938.

Rehearing Denied Jan. 17, 1939.

Miley, Hoffman, Williams, France & Johnson and Harry D. Turner, for plaintiff in error.

Gomer Smith and Bennett & Bennett, for defendant in error.

WELCH, J. This is an appeal from a

judgment in the sum of $20,000 rendered by the district court of Oklahoma county in favor of Mrs. Dora E. Thompson, hereinafter referred to as plaintiff, and against Yellow Cab Operating Company of Oklahoma City, a domestic corporation, hereinafter referred to as defendant. The suit was instituted by plaintiff to recover damages for personal injuries arising out of a collision between automobiles.

Plaintiff alleged that a certain Buick car driven by her son, Frank, and in which she was riding, was run into by a Yellow Cab owned and operated by defendant at 8:45 p. m. October 7, 1934, at the intersection of Twelfth and Harvey streets, in Oklahoma City; that said Buick car was going north and had entered said intersection and was engaged in turning to the left from Harvey avenue onto Twelfth street, when the driver of defendant's cab carelessly and negligently ran his cab into said car. Defendant was guilty of negligence in that the said cab was being run at a high and dangerous rate of speed, of 35 to 40 miles per hour; that the driver failed to keep a reasonable lookout and proper control of said cab as it approached and entered said intersection, and that he negligently failed to stop or slacken the speed of the cab, so as to avoid striking the Buick car, and failed to give such car the right of way. Plaintiff also pleaded ordinance No. 3602, of said city, prohibiting the driving of automobiles upon the streets at more than 25 miles per hour; that the impact of the cab against the Buick car was so severe that plaintiff was thrown out of the car upon the pavement, and she suffered severe and permanent injuries to her arms, neck, body, hips, back, abdomen, and several internal injuries to her kidneys and their attachments; that the third and fourth ribs on the left side were broken, and that she suffered a retroverted uterus, and that a major operation was necessary for her relief.

Defendant's answer was a general denial, a plea of contributory negligence, and that the collision was unavoidable, and, finally, that plaintiff's injuries, if any, were due to the negligence of her son, imputable to the plaintiff.

Plaintiff's reply was a verified denial.

During the trial plaintiff sought and was given permission to amend her petition so as to state that defendant saw the automobile in which plaintiff was riding in a position of peril in time to have avoided the injury by the use of the means at its command.

Defendant's assignments of error are presented under four propositions. The first is that "the trial court clearly abused his discretion in denying the defendant's motion for such a continuance as would permit the defendant to be represented by attorneys prepared to try the case." From the record it is obvious that the trial court gave proper consideration to defendant's application for continuance. It is also obvious that during the trial of the cause the defendant was represented by able counsel, and the defense so well presented as to indicate that defendant suffered no injury from lack of preparation of counsel. The refusal of the continuance herein being a matter of discretion with the trial court, and it appearing that such discretion was not abused to the prejudice of the substantial rights of the defendant, that action of the trial court will not be disturbed.

Under defendant's proposition 2 it is urged that the trial court erred in refusing the motion of defendant to discharge two special veniremen from the jury.

In support of the motion the defendant offered evidence that, before the issuance of a special venire, two persons, who later became special veniremen, were seen in the courtroom after the regular panel was excluded and during the time counsel was discussing the case in connection with a motion for continuance; that thereafter these same two persons accosted the court clerk in a corridor of the courthouse and gave him their names and suggested their willingness to serve as jurors; that thereafter a special venire was issued and these two persons were together when one was served by a deputy sheriff, and that he suggested to the sheriff that the other person would make a good juror, and the second person was then served. The further contention was made that at the time the motion was presented, which was before opening statements of counsel, several members of the regular jury panel had become available for service in this case.

In our view a willingness or even desire of a person to perform jury service does not in itself indicate an interest in a particular case, nor make such person incompetent or disqualified to serve as a juror. The jurors under oath stated to the court that they had not been in the courtroom during any of the earlier arguments or proceedings in the case.

The question of whether these special veniremen received prejudicial information or were in any manner biased, prejudiced, interested or unfair was determined by the trial court upon conflicting evidence. We conclude that the refusal to discharge the two special veniremen was just and proper under the circumstances.

Under defendant's proposition 3 it is urged that the trial court erred in giving to the jury an instruction on the last clear chance doctrine for the reason that the last clear chance doctrine was not raised by the evidence. The record discloses that defendant cab driver, while approaching plaintiff's automobile at a high rate of speed, saw plaintiff's automobile and knew that he could not pass it, and that a collision was imminent, and, although he testified that he promptly applied his brakes when he saw that danger was imminent, there were physical facts and circumstances in evidence to the contrary.

The physical facts and circumstances not only contradict the statement of the cab driver that he promptly tried to stop, but indicate that after he discovered the plaintiff in a position of peril he could have prevented the injury by the exercise of ordinary care. An instruction on the doctrine of last clear chance was applicable to the facts shown in the instant case. See Oklahoma Railway Co. v. Overton, 158 Okla. 96, 12 P.2d 537; the second paragraph of the syllabus reads:

"To establish liability under the so-called humanitarian doctrine, or doctrine of the last clear chance, it is necessary to prove: (1) That the person was in a place of danger; (2) that he was seen in such place of danger by the owner or an agent or servant of the owner; and (3) a failure thereafter to use ordinary care to avert injury. Gypsy Oil Co. v. Ginn, 152 Okla. 30, 3 P.2d 714."

Under this assignment of error it is also contended that a certain instruction charged the defendant with the duty of exercising the highest degree of care, rather than ordinary care, and was therefore erroneous.

The instruction given is as follows:

"You are instructed that should you find and believe from the evidence by a preponderance thereof that the defendant's driver saw the automobile in which plaintiff was riding in a position of peril and danger by reason of the approach of his taxicab and should you find and believe from the evidence by a preponderance thereof that when said defendant's driver saw said automobile in which plaintiff was riding in a position

of peril as aforesaid, that he could have thereafter with the use and the means at his command have stopped said taxicab and thus avoided injuring plaintiff, then in such event it will be your duty to return a verdict in favor of the plaintiff and against the defendant; and this would be true even if you find from the evidence that the plaintiff or her son were guilty of contributory negligence in the driving of their car."

After plaintiff's position was discovered it became apparent that an injury to the plaintiff could not be avoided, except by stopping the taxicab, and under such circumstances the ordinarily prudent man would have exercised "the use and means at his command" to stop.

The instruction complained of does not charge the defendant with the duty of exercising any more than ordinary care, or any more than an ordinarily prudent man would exercise under the circumstances.

The record discloses considerable testimony concerning the brakes of the taxicab. Under the facts in the case the phrase, "the use and means at his command," as used in the instruction, did not mislead the jury nor charge the defendant with more than ordinary care. Such term, as used, carried with it the suggestion of the reasonable use of means reasonably apparent to an ordinarily prudent person.

The defendant cites the case of Crystal Ice and Ice Cream Co. v. Wood, 53 Okla. 592, 157 P. 904, as decisive of this proposition. That case held an instruction was erroneous in that it placed too high a degree of care upon the defendant. The pertinent language in the instruction held erroneous is as follows:

"* * * The defendant discovered * * * that the accident was about to occur, and could, by the exercise of all the means at his command, have avoided the accident and that he failed to do all in his power after the discovery of the situation of the plaintiff to avoid the collision. * * *"

The expressions "all the means at his command" and "all in his power * * * to avoid the collision" were in that case deemed to suggest that the defendant must use a higher degree of care than ordinary care. The instruction given in the instant case is not subject to the same objection.

Under defendant's proposition 4 it is urged that "the trial court erred in giving to the jury the instruction pertaining to the injuries claimed and alleged by the plaintiff, for the reason that the injuries alleged were entirely unsupported by the

evidence." The testimony of the plaintiff concerning her injuries and their nature and extent was substantially the same as alleged in her petition and as shown in the instructions; therefore, the instruction was applicable to the evidence and not improper.

Under this proposition it is also urged that "the verdict is excessive and the amount awarded so flagrantly outrageous as to manifestly show that the verdict was rendered under the influence of passion and prejudice and that the verdict displays an obvious miscarriage of justice." We find convincing merit in this contention.

Concerning the injuries received at the time of the accident, the plaintiff testified in part as follows:

"I was struck here under the eye and along my chin, and two ribs were broken here. I had a bad bruise on my left arm, a bruise over my left kidney, both hips were terribly bruised, that is, the lower part of my hips where I sit down, and my left leg between the knee and ankle was bruised. There was a slight bruise on the right leg."

Following the accident plaintiff returned to her home, where she was given medicine to quiet her, and she received no further ministrations from a physician except a taping of the chest to correct the two fractured ribs. Within two days after the accident the plaintiff was given a general examination by a physician, and at that time was discharged by him as requiring no further treatment. The rib fractures were simple fractures and were not attended by complications. Bruise marks were found, but there were no cuts or lacerations. Within 23 days after the accident plaintiff reported that she was "feeling all right, but still felt some soreness after taking a little undue exercise." Two months after the accident plaintiff was "up and around and attending church regularly." However, plaintiff testified that, at the time of the trial, which was eight months after the accident, she suffered from a dull pain in her lower back when she walked or did any kind of heavy work, and that she had been compelled to employ a maid to assist her in her household work. Subsequent to the accident plaintiff suffered from irregular menstruation, accompanied by unusual pain in the lower back, which condition prompted a further physical examination. The physician who then examined the plaintiff testified that she had a retroverted uterus caused by the accident, and that the retroverted uterus caused the back pains, which pains would be continuous until the condition was corrected. It was established by the uncontradicted evidence that a retroverted uterus can be corrected by an operation. The operation was described as a fairly simple operation, ordinarily attended with complete success, and that it would require one or two weeks of the patient's time and an expenditure for doctor's fee and hospitalization of not to exceed $250.

Accepting plaintiff's theory as true, that her present condition was a direct result of the injuries received, we are not able to reach any other conclusion than that the verdict was grossly excessive.

In the case of St. Louis & S. F. R. Co. v. Hodge, 53 Okla. 427, 157 P. 60, the court in the 10th paragraph of the syllabus said:

"While in an action for personal injury a verdict will not be set aside for excessive damages, unless it clearly appears that the jury committed some gross and palpable error, or acted under some improper bias, influence, or prejudice, or have totally mistaken the rules of law by which damages are regulated; yet, where from the size of the verdict it is apparent that it was given under the influence of passion or prejudice, the court may direct a reversal of the case, or give the plaintiff the option to remit the excess, and allow the judgment to stand as modified."

Upon consideration of the nature of the injuries sustained, none of which were permanent except for the retroverted uterus, which was susceptible of correction, and on consideration of the pain and suffering of plaintiff, and there being no disfigurements, and the further consideration of the loss of time from household duties, the cost for maid employment, the cost and danger of a necessary operation and loss of time caused thereby, it appears that the size and amount of the verdict, $20,000, is in excess of any sum that could properly be based upon any idea of compensation, and that the verdict was given under the influence of passion or prejudice.

We are convinced that a case of liability was shown. If, therefore, a remittitur is filed for all in excess $7,500, and interest thereon from date of verdict, within 30 days from the receipt of the mandate herein by the trial court, the judgment as thus corrected will be affirmed; otherwise, the judgment will be reversed, and a new trial granted.

OSBORN, C. J., BAYLESS, V. C. J., and

GIBSON and HURST, JJ., concur. RILEY, PHELPS, CORN, and DAVISON, JJ., dissent.